UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KAREN KEMPF, Plaintiff,

v. Civil Action No. 3:16-cv-492-DJH

LUMBER LIQUIDATORS, INC., Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Karen Kempf purchased flooring for her home from Lumber Liquidators, Inc. in February 2015. Within a few weeks of installation, Kempf noticed several defects in her new floor. Kempf filed this purported class action against Lumber Liquidators, alleging violations of the Kentucky Consumer Protection Act and breaches of implied and express warranties. (Docket No. 1) She brings this action on her own behalf and on behalf of all individuals in Kentucky who purchased the same floor for their homes.

Lumber Liquidators moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] (D.N. 4) It argues that Kempf's complaint lacks sufficient factual allegations to state her claims. Kempf maintains that she sufficiently pleaded facts to support her claims. For the reasons explained below, the Court will deny the motion to dismiss.

**I. BACKGROUND**

The following facts are set out in the complaint and accepted as true for purposes of the motion to dismiss. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Lumber

---

[1] At the time the motion was filed, a nationwide class action lawsuit concerning the same floor and asserting similar claims was pending before the Northern District of California. Therefore, Lumber Liquidators moved, alternatively, to either stay or transfer this action. (*Id.*) It has since moved to withdraw its alternative motion, as the proposed class in the California case excluded Kentucky consumers. (D.N. 13)

1

Liquidators is a specialty retailer of hardwood flooring. (D.N. 1, PageID # 2) In February 2015, Kempf purchased Morning Star Bamboo Flooring from Lumber Liquidators. (*Id.*) Before purchasing her new flooring, Kempf spoke with a sales representative who made the following statements to her about the Morning Star Bamboo Flooring: (1) "The Floor is harder and more durable than real wood"; (2) "The Floor will not dent like other hardwood floors"; (3) "The Floor is virtually scratch resistant"; (4) "The Floor is at least two-and-a-half times stronger than red oak"; and (5) "To make strand bamboo, shredded bamboo fibers are compressed under extreme heat and pressure. This manufacturing process yields flooring that is even harder and denser than traditional bamboo floors." (*Id.*, PageID # 2-3) The sales representative also informed Kempf that the flooring came with a thirty-year warranty. (*Id.*, PageID # 3) Kempf decided to purchase the flooring based on the above representations. (*Id.*)

Lumber Liquidators recommended to Kempf that she use its installer to install her new floor. (*Id.*) The installer first inspected and measured her home, suggesting that she purchase a moisture barrier that would be installed between the home's concrete slab and the floor. (*Id.*) Kempf purchased a moisture barrier from Lumber Liquidators as suggested. (*Id.*) Both the moisture barrier and the floor were installed on April 22, 2015. (*Id.*, PageID # 3-4)

Within a few weeks after installation, Kempf noticed the following problems: the floor began shrinking in certain areas; individual planks "started cupping"; the floor made "loud popping and cracking sounds when walked on"; some planks splintered; and the floor scratched easily. (*Id.*, PageID # 4) Kempf raised these issues with the sales representative, who advised Kempf that "nothing was wrong" and that the floor would "settle." (*Id.*) Kempf waited a couple more weeks, but the floor did not settle. (*Id.*) She returned to Lumber Liquidators and spoke

again with the sales representative, who recommended that Kempf submit a complaint to Lumber Liquidators' corporate office. (*Id.*)

In response to Kempf's complaint, Lumber Liquidators sent an inspector to her home. (*Id.*) On June 13, 2015, Lumber Liquidators sent Kempf a letter regarding the inspection. (*Id.*) The letter concluded that the problems with the floor were due to installation failures and were not covered by the floor's warranty. (*Id.*, PageID # 5) Kempf later discovered that other consumers who purchased the Morning Star Bamboo Flooring complained of nearly identical problems. (*Id.*) Lumber Liquidators also told those consumers that the problems with the floor were due to installation failures and not the floor itself. (*Id.*)

Kempf brought this action on behalf of herself and all individuals in Kentucky who purchased the Morning Star Bamboo Flooring from Lumber Liquidators. (*Id.*, PageID # 6) In Count I of the complaint, she asserts a claim for violations of the Kentucky Consumer Protection Act (KCPA). (*Id.*, PageID # 9) In Count II of the complaint, she asserts claims for breach of implied warranty and breach of express warranty. (*Id.*, PageID # 10) Lumber Liquidators moved to dismiss these claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.N. 4)

At the time Lumber Liquidators filed its motion to dismiss, a similar nationwide class action lawsuit was pending in the Northern District of California. (D.N. 4-1, PageID # 22-23) As a result, Lumber Liquidators asked the Court to either dismiss Kempf's claims or, in the alternative, stay this action pending the outcome of the California case or transfer this action to the Northern District of California. (*Id.*, PageID # 23) In March 2017, however, the plaintiffs in the California case narrowed the scope of their claims, moving to certify a class of individuals who reside in California, Florida, Illinois, Minnesota, Pennsylvania, and West Virginia. (D.N.

13, PageID # 281) With Kentucky excluded from this proposed class, Lumber Liquidators moved to withdraw its alternative motion to stay or transfer this action. (*Id.*) This change does not affect Lumber Liquidators' motion to dismiss. (*Id.*)

## II. STANDARD

To survive a motion to dismiss for failure to state a claim, Kempf's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8. *Id.* at 679. Legal conclusions will not carry a complaint past the motion-to-dismiss stage in the absence of supporting factual allegations, and a plaintiff is not entitled to a fishing expedition for facts to support her claims. *See id.* at 678-79.

"When the plaintiffs plead claims which sound in fraud, those claims are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b)." *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 733, 740-41 (W.D. Ky. 2013) (applying the Rule 9(b) heightened pleading standard to the plaintiffs' KCPA claim); *see Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). If allegations of fraud or mistake are made, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this heightened standard, the plaintiff must "(1) specify the time, place, and content of

the alleged misrepresentation; (2) identify the fraudulent scheme and the fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud." *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 358 (6th Cir. 2014). "Generalized and conclusory allegations that the [defendant's] conduct was fraudulent do not satisfy Rule 9(b)." *Bovee*, 272 F.3d at 361.

## III. DISCUSSION

### A.

In Count I of the complaint, Kempf alleges that Lumber Liquidators violated the KCPA by engaging in "unfair business practices," "failing to disclose material facts regarding the defective nature of the Floor," and "misrepresenting . . . the appearance and durability characteristics of the Floor." (D.N. 1, PageID # 9) She further claims that the flooring "degrades far in advance of its purported life as represented [in Lumber Liquidators'] thirty (30) year warranty." (*Id.*, PageID # 10) Lumber Liquidators argues that Count I must be dismissed for the following reasons: (1) Kempf cannot bring a class action under the KCPA; (2) Kempf fails to plausibly allege deception or unconscionability as required by the KCPA; (3) Kempf fails to demonstrate that Lumber Liquidators knew of any purported defects; and (4) Kempf's claim lacks the factual detail required by Rule 9(b). (D.N. 4-1, PageID # 28-29)

To assert a KCPA claim, the plaintiff must allege that the defendant engaged in "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" and that such practices caused the plaintiff's harm. Ky. Rev. Stat. § 367.170(1); *Naiser*, 975 F. Supp. 2d at 741. "The terms 'false, misleading and deceptive' [have] sufficient meaning to be understood by a reasonably prudent person of common intelligence." *Stevens v. Motorists Mut. Ins.*, 759 S.W.2d 819, 820 (Ky. 1988). Therefore, they "are given their ordinary meaning as

understood by a reasonably prudent person of common intelligence." *Noble v. Time Ins.*, No. 11-345-GFVT, 2013 WL 1964819, at *4 (E.D. Ky. May 10, 2013).

### 1.     Availability of Class Action Under the KCPA

First, the Court will address Lumber Liquidators' argument that Kempf cannot bring a class action under the KCPA. In support of this argument, Lumber Liquidators cites an unpublished Kentucky trial-court case in which the court stated that it "[did] not believe that [the KCPA] was meant to be a vehicle for Class Action suits." *Arnold v. Microsoft Corp.*, No. 00-CI-00123, 2000 WL 36114007, at *6 (Ky. Cir. Ct. July 21, 2000). The court provided little support for its conclusion, merely referencing the "venue requirements and other language of [Ky. Rev. Stat. §] 367.220." *Id.* at *8. Federal courts in other districts have also addressed the issue of whether the KCPA permits class actions and concluded that it did not. *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 999-1001 (N.D. Cal. 2016) (relying on *Arnold* to dismiss a class action claim under the KCPA); *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1163 (D. Minn. 2014) (concluding that Kentucky's consumer-protection statute prohibits class-action treatment of claims); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005) (relying on *Arnold* to state that "there is no right to bring a class action to enforce" Kentucky's consumer-protection statute).

Under the KCPA,

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by [Ky. Rev. Stat. §] 367.170, may bring an action under the Rules of Civil Procedure in the Circuit Court in which the seller or lessor resides or has his principal place of business or is doing business, or in the Circuit Court in which the purchaser or lessee of goods

6

or services resides, or where the transaction in question occurred, to recover actual damages.[2]

Ky. Rev. Stat. § 367.220(1). There is no explicit prohibition of class actions in the provision quoted above or anywhere else in the KCPA. *See* §§ 367.110-.360. (*See also* D.N. 4-11, PageID # 217 (noting that Kentucky's consumer-protection statute contains no language barring a class claim)) Consumer-protection statutes in other states that prohibit class actions typically say so explicitly. *See, e.g.*, Ala. Code § 8-19-10(f) ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class."); Ga. Code Ann. § 10-1-399(a) ("Any person who suffers injury or damages as a result of a violation of [Georgia's consumer-protection statute] . . . may bring an action individually, but not in a representative capacity . . . ."); La. Stat. Ann. § 51:1409(a) ("Any person who suffers any ascertainable loss of money or movable property . . . as a result of [a violation of Louisiana's consumer-protection statute] may bring an action individually but not in a representative capacity . . . ."); Miss Code Ann. § 75-24-15(4) ("Nothing in this [consumer-protection] chapter shall be construed to permit any class action or suit . . . ."); S.C. Code Ann. § 39-5-140(a) ("Any person who suffers any ascertainable loss of money or property . . . as a result of [a violation of South Carolina's consumer-protection statute] may bring an action individually, but not in a representative capacity . . . ."); Tenn. Code Ann. § 47-18-109(a)(1) ("Any person who suffers an ascertainable loss of money or property . . . as a result of [a violation of Tennessee's consumer-protection statute] may bring an action individually . . . .").

In Kentucky, "[t]he cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect." *Wade v. Poma Glass & Specialty Windows,*

---

[2] "Person" is defined to include "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity." Ky. Rev. Stat. § 367.110(1).

7

*Inc.*, 394 S.W.3d 886, 888 (Ky. 2012). "To determine legislative intent, [the court] look[s] first to the language of the statute, giving the words their plain and ordinary meaning." *Id.* "And '[the court] read[s] the statute as a whole and in context with other parts of the law.'" *Id.*

The KCPA includes a section stating the legislature's intent: "The General Assembly finds that the public health, welfare and interest require a strong and effective consumer protection program to protect the public interest and the well-being of both the consumer public and the ethical sellers of goods and services . . . ." Ky. Rev. Stat. § 367.120(1). Further, the KCPA allows any "person" to bring suit for violations of the Act, § 367.220(1), broadly defining "person" to include "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity." § 367.110(1). At this stage, the Court cannot conclude that class actions would be inconsistent with the legislature's desire for a "strong and effective consumer protection program." § 367.120(1).

Notwithstanding *Arnold*, class actions under the KCPA have been previously certified by this Court and Kentucky state courts on several occasions. *See, e.g.*, *Brummett v. Skyline Corp.*, 38 Fed. R. Serv. 2d 1443, at *1, *5 (W.D. Ky. 1984) (granting plaintiffs' motion to certify class of Kentucky residents in a case involving KCPA claims); *Merck & Co. v. Combs*, No. 2010-SC-000529-MR, 2011 WL 1104133, at *1-2 (Ky. Mar. 24, 2011) (affirming lower court's certification of a class in a case involving KCPA claims). And in numerous other cases involving the KCPA, courts have addressed class claims without discussing whether such claims were permissible under the Act. *See, e.g.*, *Wiggins v. Daymar Colls. Grp.*, 317 F.R.D. 42, 43-44, 46 (W.D. Ky. 2016); *Corder v. Ford Motor Co.*, 297 F.R.D. 572, 577, 579 (W.D. Ky. 2014); *Tallon v. Lloyd & McDaniel*, 497 F. Supp. 2d 847, 849, 854-55 (W.D. Ky. 2007). Moreover, the

*Arnold* court's analysis of the statute is, at best, thin.[3] The court appears to have based its conclusion that the KCPA does not allow class actions largely on the "venue requirements and other language of [Ky. Rev. Stat. §] 367.220." *Arnold*, 2000 WL 36114007, at *8.

This Court finds, however, that the venue requirements of Section 367.220(1) do not prohibit class actions. A KCPA action may be brought in one of three locations: (1) the circuit court where the seller resides or has its principal place of business or is doing business, (2) the circuit court where the purchaser resides, or (3) the circuit court where the transaction occurred. Ky. Rev. Stat. § 367.220(1). A class action might not easily fit within the second or third venue category. For instance, in the present case, purchasers of the floor will inevitably reside in different parts of the state, and Lumber Liquidators has numerous Kentucky stores where the floor might have been sold, *see Store Locator*, Lumber Liquidators, http://www.lumberliquidators.com/ll/storelocator/state/KY (last visited Sept. 27, 2017), meaning that transactions likely would have taken place in different parts of the state as well. But a class action could be filed under the first venue category, in the circuit court where Lumber Liquidators has its principal place of business. Therefore, it is unclear why the statute's venue requirements would pose a problem for class actions. Nor is it clear why the *Arnold* court pointed to the language of Section 367.220 as an obstacle to class actions when the statute simply provides "[a]ny person" with a remedy. Ky. Rev. Stat. § 367.220(1). Accordingly, the Court concludes that, in the absence of legislative intent to the contrary, class actions are not prohibited by the KCPA. *Cf. Corder v. Ford Motor Co.*, 285 F. App'x 226, 228 (6th Cir. 2008) ("Kentucky courts construe the KCPA 'broadly to effectuate its purpose of curtail[ing] unfair,

---

[3] While *Arnold* was affirmed by the Kentucky Court of Appeals in an unpublished opinion, the Court of Appeals did not discuss whether class actions are permitted under the KCPA. *See Arnold v. Microsoft Corp.*, No. 2000-CA-002144-MR, 2001 WL 1835377 (Ky. Ct. App. Nov. 21, 2001).

false, misleading or deceptive practices in the conduct of commerce.'" (quoting *Commonwealth ex rel. Chandler v. Anthem Ins. Cos.*, 8 S.W.3d 48, 54 (Ky. Ct. App. 1999))); *Stevens v. Motorists Mut. Ins.*, 759 S.W.2d 819, 821 (Ky. 1988) ("[T]he Kentucky legislature created [the KCPA] which has the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts.").

### 2. Sufficiency of Kempf's Complaint

Second, the Court finds that Kempf has adequately pleaded a claim under the KCPA. Kempf asserts that Lumber Liquidators failed to disclose material facts regarding the defective nature of the floor and misrepresented its appearance and durability. (D.N. 1, PageID # 9) She also asserts that the floor "degrades far in advance of its purported life as represented through its thirty (30) year warranty." (*Id.*, PageID # 10) The facts alleged in the complaint, which the Court must accept as true at this stage, *see Directv, Inc.*, 487 F.3d at 476, demonstrate that the floor began shrinking, cupping, making popping and cracking sounds, splintering, and scratching within a few weeks of installation. (D.N. 1, PageID # 4) And this was after Lumber Liquidators' salesperson represented to Kempf that the floor was harder and more durable than wood; the floor would not dent; the floor was "virtually scratch resistant"; the floor was "at least two-and-a-half times stronger than red oak"; and the floor was harder and denser than traditional bamboo floors. (*Id.*, PageID # 2-3) Under these alleged facts, Lumber Liquidators at least misled Kempf, and at worst deceived her, in the understanding of a reasonably prudent person. *See Noble*, 2013 WL 1964819, at *4. As asserted by Kempf, Lumber Liquidators' misleading or deceptive practices caused her harm because she decided to purchase the floor—which the complaint alleges began shrinking, cupping, making loud noises when walked upon, splintering, and scratching easily—based on the representations listed above. (D.N. 1, PageID # 3-4) *See*

*Naiser*, 975 F. Supp. 2d at 742 (finding that plaintiffs adequately pleaded causation when they alleged that they purchased a product based on the defendant's representations and that the product caused them harm). Thus, Kempf has sufficiently pleaded all of the elements of a KCPA claim. *See id.* at 741.

Lumber Liquidators argues, however, that "[e]ven if [Kempf] had alleged all the elements of a KCPA claim . . . [her] KCPA claim fails to meet the more stringent requirements imposed by Rule 9(b)." (D.N. 4-1, PageID # 38) Lumber Liquidators is correct that the Rule 9(b) heightened pleading standard applies to KCPA claims. *See Naiser*, 975 F. Supp. 2d at 733, 740-41 (applying that standard to plaintiffs' KCPA claim). But Kempf has pleaded sufficient facts to meet that heightened standard. She has specified the time (February 2015), the place (the Lumber Liquidators store), and the content, *see supra*, of the alleged misrepresentation. *See SFS Check, LLC*, 774 F.3d at 358. She has identified the fraudulent scheme and fraudulent intent of Lumber Liquidators by alleging specific misrepresentations, *see supra*, as well as facts showing that other purchasers of the same floor had identical complaints and similarly were told by Lumber Liquidators that the problems arose from installation and not from the floor (D.N. 1, PageID # 5). *See SFS Check, LLC*, 774 F.3d at 358. Finally, she has described the injury resulting from the fraud by alleging the poor condition of her floors (D.N. 1, PageID # 4-5). *See SFS Check, LLC*, 774 F.3d at 358. The Court therefore finds that the allegations in Kempf's complaint are sufficient to support a KCPA claim. *See Naiser*, 975 F. Supp. 2d at 741 (finding pleadings to be sufficient to support a KCPA claim when they alleged the following: (1) the defendant represented that the product was a smoothing treatment when it was actually a chemical hair straightener; (2) the defendant represented that the product's effects would last no longer than thirty days when the effects could be expected to last for months; and (3) the

defendant represented that the product contained no formaldehyde when it contained a chemical known to release formaldehyde upon use).

**B.**

Count II of Kempf's complaint claims that Lumber Liquidators breached its implied warranty "by manufacturing, selling, and distributing the Floor, which is defective in design, materials, workmanship, and not fit for its intended purpose." (D.N. 1, PageID # 10) Lumber Liquidators argues that Kempf fails to allege sufficient facts showing that the floor is not merchantable or fit for ordinary use. (D.N. 4-1, PageID # 40; D.N. 12, PageID # 276) It further argues that "[a]t most, [Kempf] alleges that the bamboo flooring does not meet her aesthetic expectations, not that it fails to adequately serve as flooring or is unsafe." (D.N. 4-1, PageID # 40) These arguments are unpersuasive in support of a motion to dismiss.

"[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ky. Rev. Stat. § 355.2-314(1). To be merchantable, goods must at least (a) pass without objection in the trade under the contract description; (b) be of fair average quality within the description in the case of fungible goods; (c) be fit for the ordinary purposes for which such goods are used; (d) run within the variations permitted by the agreement; (e) be adequately contained, packaged, and labeled as the agreement may require; and (f) conform to any promises or affirmations of fact made on the container or label. § 355.2-314(2)(a)-(f).

The problems with the floor alleged in the complaint—shrinking, gapping, cupping, popping, splintering, and scratching—demonstrate that the floor was not fit for its ordinary purpose. *See Byler v. Scripto-Tokai Corp.*, Nos. 90-6112, 90-6113, 1991 WL 181749, at *6 (6th Cir. Sept. 17, 1991) (explaining that, under Kentucky law, goods are not fit for their ordinary

purposes when the products "fail[] to perform the simple task that [they were] manufactured for"); *see also Courey Int'l v. Designer Floors of Tex., Inc.*, No. 03-09-00059-CV, 2010 WL 143420, at *4 (Tex. Ct. App. Jan. 15, 2010) (holding that evidence of popping and cupping was sufficient to show that flooring was not suitable for its ordinary purpose). The Court therefore finds that Kempf has sufficiently pleaded a claim for breach of implied warranty.

## C.

Count II of the complaint further alleges that Lumber Liquidators made and breached express warranties. (D.N. 1, PageID # 10) Lumber Liquidators argues that this claim fails because any representations made by the salesperson were "nonactionable puffery" and Kempf thus "fails to allege an actionable express warranty." (D.N. 4-1, PageID # 39) Even if Kempf had alleged an actionable express warranty, Lumber Liquidators argues, she "fails to allege that Lumber Liquidators *breached* any purported express warranty." (*Id.*) Kempf disagrees, arguing that the representations made to her do not constitute puffing and that she has otherwise sufficiently alleged that the warranties were made and breached. (D.N. 8, PageID # 244)

An express warranty is created where the seller makes an "affirmation of fact or promise" that "relates to the goods and becomes part of the basis of the bargain" between the parties. Ky. Rev. Stat. § 355.2-313(1)(a); *Naiser*, 975 F. Supp. 2d at 733. "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Ky. Rev. Stat. § 355.2-313(1)(b). "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." § 355.2-313(2).

"Every statement made by a seller, however, does not create an express warranty. A seller may puff his wares and state his opinion on their value without creating an express warranty. . . .

13

The existence of an express warranty depends upon the particular circumstances in which the language is used and read." *Overstreet v. Norden Labs.*, 669 F.2d 1286, 1290 (6th Cir. 1982). "'[P]uffing' is generally defined as an 'expression of an exaggerated opinion—as opposed to a factual misrepresentation—with the intent to sell a good or service.'" *Naiser*, 975 F. Supp. 2d at 735 (quoting Black's Law Dictionary 1353 (9th ed. 2009)). "[W]hether an express warranty was created is generally a question for the trier of fact." *Morgan v. Cabela's Inc.*, 788 F. Supp. 2d 552, 556 (E.D. Ky. 2011) (citing *Moore v. Mack Trucks, Inc.*, 40 S.W.3d 888, 891 (Ky. Ct. App. 2001)). "The test is 'whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may each be expected to have an opinion and exercise a judgment.'" *Overstreet*, 669 F.2d at 1290-91 (quoting *Wedding v. Duncan*, 220 S.W.2d 564, 567 (Ky. 1949)).

According to the complaint, the Lumber Liquidators salesperson made the following representations to Kempf: (1) "The Floor is harder and more durable than real wood"; (2) "The Floor will not dent like other hardwood floors"; (3) "The Floor is virtually scratch resistant"; (4) "The Floor is at least two-and-a-half times stronger than red oak"; and (5) "To make strand bamboo, shredded bamboo fibers are compressed under extreme heat and pressure. This manufacturing process yields flooring that is even harder and denser than traditional bamboo floors."[4] (D.N. 1, PageID # 2-3) The above statements do not appear to be exaggerated opinions; rather, they appear to be assertions of fact. Indeed, the statements refer to specific factual attributes of the flooring. *See Mitchell v. Gen. Motors LLC*, No. 3:13-CV-498-CRS, 2014 WL 1319519, at *8 (W.D. Ky. Mar. 31, 2014) (distinguishing general statements regarding

---

[4] Lumber Liquidators argues that the Northern District of California concluded that similar statements were mere puffery. (D.N. 4-1, PageID # 30-31) But California law imposes a different standard than Kentucky law. *See Gold v. Lumber Liquidators, Inc.*, No. 14-cv-05373-TEH, 2015 WL 7888906, at *6-7 (N.D. Cal. Nov. 30, 2015).

quality from specific factual attributes, which are actionable under the statute). Therefore, due to the fact-intensive nature of this issue, the Court cannot conclude as a matter of law that the representations were mere puffery. *See Naiser*, 975 F. Supp. 2d at 735-36.

A claim for breach of express warranty must allege that the "goods fail to conform to the manufacturer's express representations." *Enlow v. St. Jude Med., Inc.*, 210 F. Supp. 2d 853, 861 (W.D. Ky. 2001). Count II of Kempf's complaint asserts that "Lumber Liquidators breached its express and implied warranties by manufacturing, selling, and distributing the Floor, which is defective in design, materials, workmanship, and not fit for its intended purpose." (D.N. 1, PageID # 10) Lumber Liquidators argues that Kempf's claim is deficient because she has not offered any facts showing that the flooring was not "harder and more durable than real wood," "at least two-and-a-half times stronger than red oak," or "scratch resistant." (D.N. 4-1, PageID # 39; D.N. 12, PageID # 275)

The complaint details the numerous problems Kempf noticed within weeks of having her new floor installed, including shrinking, cupping, popping and cracking sounds, splintering, and scratching. (D.N. 1, PageID # 4) At this stage of the proceedings, the Court is obligated to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *See Directv, Inc.*, 487 F.3d at 476. The Court infers from the defects alleged in the complaint that any express warranties that may have been made by the sales representative were breached. Therefore, the Court finds that Kempf has adequately pleaded that Lumber Liquidators breached the alleged express warranties.

## IV. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Defendant Lumber Liquidators' motion to withdraw (D.N. 13) is **GRANTED**.

(2) Defendant Lumber Liquidators' motion to dismiss (D.N. 4) is **DENIED**.

September 27, 2017

**David J. Hale, Judge
United States District Court**